**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID A. SMITH,

    Petitioner,

vs.

JULIO VALADEZ, Warden,

    Respondent.
                                                     /

No. C 02-4725 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner has not filed a traverse. The matter is submitted.

**BACKGROUND**

A Santa Clara County jury convicted petitioner of attempted premeditated and deliberate murder, first degree burglary, assault with a stun gun, and possession of stolen property. The trial court, however, subsequently struck the jury finding that the attempted murder was premeditated and deliberate. Petitioner was sentenced to prison for seven years. The California Court of Appeal affirmed his conviction and sentence and the Supreme Court of California denied review.

Because the only issue is whether the evidence was sufficient to support the verdict, an extensive recitation of the facts is necessary. The facts below are quoted from or summarized from the opinion of the California Court of Appeal.

///

> On July 9, 1998, at around 7:00 p.m., with the sun still up, Gary Sperber was taking at shower at his residence at 731 Los Padres Boulevard in Santa Clara when he heard his doorbell ring. Sperber grabbed a nearby bathing suit and answered the door.
> When Sperber opened the door, defendant was standing outside, separated from Sperber only by the screen door. Defendant told Sperber that a package addressed to Gary Sperber had been misdelivered to him. Defendant wanted to know if Sperber was Gary Sperber. Sperber said he was. Sperber saw a box on his porch wrapped in brown paper with his name and address on it. Defendants was not wearing any sort of disguise and did not have anything in his hands.
> Sperber pushed the screen door open and bent down to pick up the box. As he did so, defendant shot him with a stun gun, which hit him in the arm. The electrical shock caused Sperber to jump back into the house. Defendant followed Sperber into the house, pointing a black, six-inch long stun gun at Sperber. Sperber saw electricity, which had the color of blue ice, jumping between two posts on the front of the stun gun.
> Sperber backed up and asked defendant: "What are you doing?" Defendant responded: "Don't you remember me, Gary." Sperber, who had no idea who defendant was, told defendant that he did not remember him. Sperber continued to back up down the hallway. When Sperber reached another hallway, he made a sudden turn and ran out the front door onto [sic] his front yard. Defendant came out of the house, picked up the box, and ran away.

Ex. C (opinion of court of appeal) at 2.[1]

Sperber returned to the house and called 911. *Id.* The officers who responded to the call looked inside a black satchel found outside the door to the garage and found a 12-inch survival knife and a filet knife, among other things. *Id.* at 2-3. As an officer was going through the satchel, petitioner walked up towards the house, extending his hands to indicate that he had nothing in them, and said that he had forgotten his bag. *Id.* at 3. As he was being arrested, he looked at Sperber, and said: "You've ruined my life twice now." *Id.*

Petitioner told the officers where they could find his car. *Id.* It contained, among other things, "a large box wrapped in brown paper containing dirt and a six-inch concrete sewer cap; a Myotron stun gun; a large envelope containing [personal items]; a knife sheath, which matched one of the knives in the black satchel; and a box of latex rubber gloves." *Id.* 3-4.

---

[1] Citations to "ex." in this opinion are to exhibits in the record lodged with the court by respondent.

2

When he was booked petitioner had a pair of latex gloves in the pocket. *Id.* at 4. In his wallet was a list of "Stuff to remember." The list read:

> "Buy nondescript new clothes
> "Bring old shoes
> "buy latex gloves
> "Don't touch anything without gloves
> "Bring change of clothes
> "Bring washcloth and soap
> "Bring trash bags
> "Have stocking cap
> "Rent nondescript car
> "Swipe license plates
> "attach plates with double sided tape when off main streets
> "take plates off when back on main streets
> "See if he's living with anyone (Call several times from pay phones)
> "See where he works
> "Look into exit into house behind and onto street behind (dogs?)
> "731 Los Padres Blvd--off Steven's Creek near San Tomas expwy
> "Find potential spot near address in case I need to do it from his car"

*Id.* at 4.

His wallet also contained a letter from someone named Jeff Sanders, who said that he was unable to obtain the gun petitioner wanted, but could get a smaller gun with no silencer. *Id.* Sanders was a student at the high school where petitioner taught. *Id.* at 5. The subject of guns had come up in conversation, and Sanders said he could get a gun if petitioner needed one; petitioner asked him to do so. *Id.* "A couple of days later, while Sanders and defendant were at the library, defendant gave Sanders a note stating that while he was a student at Stanford eight or nine years earlier, his wife was sexually assaulted by one of his professors. *Id.* The note went on to talk about guns. Defendant said he was serious about Sanders finding him a gun, and that he wanted a pistol with a silencer. Defendant said the gun was for the protection of his home." *Id.* When he was unable to find the gun, Sanders wrote petitioner the note which subsequently was found in his wallet. Petitioner did not respond. *Id.*

Petitioner's wallet also contained a slip of paper with the name "Andrew Fitting" and an address. *Id.* Fitting attended high school with petitioner and his wife, and had a "sexual encounter" with petitioner's wife about ten years prior to the trial. *Id.* He had no contact

3

with petitioner himself since graduating in 1981, and had no idea why his name was in petitioner's wallet. *Id.* at 5-6. Sperber testified that he had a sexual relationship with petitioner's wife about eight years before. *Id.* at 6.

At trial an expert on stun guns testified that they can cause the victim to fall to the ground and be "immobilized temporarily." *Id.* The stun gun found in petitioner's car was a state-of-the-art gun. *Id.*

## DISCUSSION

### A. Standard of review

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2001), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1041 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes

4

in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 123 S.Ct. at 1041.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court.  *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).  A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 123 S.Ct. at 1041.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case that of the California Court of Appeal.  *Ylst v. Nunnemaker,* 501 U.S. 797, 801-06 (1991).

**B.  Sufficiency of the evidence**

Petitioner asserts that the evidence was insufficient to support his conviction for attempted murder because the evidence was ambiguous and equivocal on the element of "intent to kill."

A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim, *Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief. *Id.* at 324.  A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

5

could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt has there been a due process violation. *Jackson*, 443 U.S. at 324. After AEDPA, a federal habeas court applies the standards of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* to the facts of the case. *Id.* 1275 (quoting 28 U.S.C. § 2254(d)).

Petitioner had a motive to try to kill Sperber. As the Court of Appeal noted, the circumstantial evidence of his stalking of Sperber and Fitting, both of whom had had affairs with his wife, suggests that he was still distressed by those affairs, even long afterward. *Id.* at 8. The coincidence of his discussion with his student of the long-ago sexual assault on his wife by a professor and his request for a gun with a silencer also suggests a sexual revenge motive.

Petitioner had tried to buy a gun, one with a silencer, which suggests that his reason for wanting one was not innocent. The jury could have inferred from the fact that he wanted a gun that his intentions were deadly. The jury also could have inferred from this evidence that when his attempt to get a gun with a silencer was unsuccessful, he adopted an alternative plan which would be equally silent – use of a stun gun, then a knife.

The list of "stuff to remember," and petitioner's actions in following it, indicate careful planning to avoid being identified. For instance, he wore latex gloves, reminded himself not to leave fingerprints, bought nondescript clothes, and attempted to disguise the vehicle he was driving – but he wore no disguise or mask when he attacked Sperber. The jury could have concluded form this that he did not expect Sperber to be in any condition to identify him after their encounter.

///

Petitioner emphasizes that he did not bring the satchel with the knives to the door,

6

contending that this suggests he did not intend to use the knives on Sperber.  This carries little weight, given that he used a stun gun which he had every reason to believe would immobilize his victim for at least a brief time, long enough to get the bag.  More to the point is that he brought the satchel to the house from his car around the corner, and left it by the garage door.  Clearly he expected to have a use for something in it, and given the contents, the jury could fairly infer that it was the knives he intended to use.

Petitioner also contends that the Court of Appeal unreasonably applied the standard set forth in *Jackson v. Virginia* because it did not cite a substantial body of California law regarding the "intent to kill" element.  Although the Court of Appeal opinion did not distinguish the facts of the present case from California cases that may have favored petitioner, the function of federal habeas is not to review how state appellate opinions are written.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.  There was evidence here to support an inference that petitioner intended to kill Sperber.  The state appellate courts' rejection of this claim was not contrary to, nor an unreasonable application of, clearly established Supreme Court authority.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  April 5 2006.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.02\SMITH725.RUL